SCHWARTZMAN ET AL. *v.* PAYNE

[No. 27, October Term, 1953.]

258

*Decided November 13, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Frank R. Long* for the appellants.

*James R. Miller,* with whom was *Lee C. Miller* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is a suit for an accounting brought in the Circuit Court for Montgomery County by Browning Payne, tenant on a dairy farm, against Dr. Marcus Schwartzman and Dr. Aaron S. Schwartzman, his landlords.

Complainant alleged that he entered into an oral agreement with defendants to operate their farm near Rockville, containing about 500 acres, and their dairy for the period of two years, beginning March 1, 1947, and that it was agreed that the parties would share equally in the profits derived therefrom. He alleged that defendants agreed to supply the equipment for the dairy, and a herd of not less than 80 cows, and also the fertilizer, lime and seed for the farm.

Complainant then alleged that he operated the farm and dairy until January 22, 1948, when defendants sold the herd of cows without his consent, and thus he was unable to continue the operation of the farm and dairy. He alleged that defendants owed him several thousand dollars, but he was unable to state the exact amount, as they had refused to render an account of the money they had received from sales of milk and the crops raised on the farm.

The chancellor first referred the case to an examiner, and on June 24, 1949, he referred the testimony which had been taken by the examiner to Clifford H. Robertson, the court auditor, to state an account. The auditor submitted an account showing complainant to be indebted to defendants in the amount of $501.81. Complainant excepted to the audit, whereupon defendants filed a motion *ne recipiatur* against the exceptions, alleging that they had not been seasonably filed. On November 2, 1949, the chancellor overruled the motion, sustained complainant's exceptions, and referred the case back to the auditor to take additional testimony and state another account.

Additional testimony was taken in January and February, 1950. It was not until December, 1950, however, that the auditor completed the second audit. This audit showed complainant to be indebted to defendants in the amount of $910.08. The auditor delayed in filing the audit until April 9, 1951, demanding payment of his costs before it was filed.

On May 2, 1951, complainant filed exceptions to the second audit. At the hearing thereon complainant's attorney produced a carbon copy of a letter, which he had found among the papers in the case, written by the auditor at Rockville to defendants' attorney in Washington on October 7, 1950. The letter reads in part as follows:

"I have read your letter of yesterday, Oct. 6th, and note your remarks.

"What I say now must be off the record, be-

cause of the fact that a compromise settlement is up, and discussions are about to take place, looking to that end. * * *

"While I will not go into the law nor give any figures I have arrived at, yet I will say that I have concluded that Schwartzman owes Payne around $3,000, and if I find that a compromise settlement is not forthcoming within a reasonable time, I will proceed with a report and give the exact figures. If this is done the costs will be in addition against Schwartzman. What the costs to be taxed by the Clerk of the Court will be I do not know, but my charges will be $300.00 for all services rendered by me.

"However, if a compromise settlement is made I will reduce my charge to $250.00.

"Now, I do not know what Mr. Miller will do when a compromise settlement is put up to him, but I have a feeling that he will take less than $3,000.00 and costs. Cash settlement may have some weight in the matter."

Complainant's attorney also asserted that on or about December 9, 1950, one of the defendants had a private conference with the auditor. Thereupon the chancellor declared that he had lost confidence in the audit and would refer the case to a special auditor to state another account. He appointed Alex. K. Hancock as the special auditor. Hancock is a lawyer and certified public accountant and Director of Finance for Montgomery County. It was agreed that all papers in the case, except the audits prepared by the regular auditor, were to be turned over to the special auditor.

On March 9, 1953, the special auditor filed an audit showing defendants to be indebted to complainant in the amount of $1,467.83. Defendants excepted, and at the hearing on the exceptions the audit was discussed item by item. Defendants also objected to two exhibits: (1) a reconciliation of the landlords' claims with the audit, and (2) a reconciliation of the tenant's claims

with the audit. But after the special auditor explained that those exhibits were nothing more than reconciliations of the opposing claims with his audit, the chancellor ratified the audit. From the order of ratification defendants appealed to this Court.

*First.* Appellants complained that the chancellor referred the case to the auditor before reading the testimony and hearing arguments thereon. They also claimed that the accounts were so simple that there was no necessity for the chancellor to refer the case to any auditor. We find no merit in those contentions. The Legislature of Maryland has authorized every judge of a court of equity in this State to appoint an auditor, who is the calculator and accountant of the court. Whenever calculations or statements of accounts are required, the court shall refer to the auditor all the pleadings, exhibits and proofs to enable him to fully investigate the case and put it in proper order for action of the court. The statute directs that all accounts to be stated, audited or settled by the court shall be referred for that purpose to the auditor, who shall have the power to administer oaths to all witnesses and persons proper to be examined upon such accounts, and shall state the accounts in accordance with the order of the court. Code 1951, art. 16, sec. 20. We are unable to agree with appellants that the instant case, which was litigated in the Court below during a period of five years, and produced a voluminous record of pleadings, exhibits and testimony, is so simple that it was unnecessary for the chancellor to refer the case to an auditor.

*Second.* Appellants contended that the chancellor erred in overruling the motion *ne recipiatur* which they filed against the exceptions to the first audit. The ground of the motion was that the exceptions were not filed within the period limited by the order of court. There is no merit in that contention. In this State it is an established rule of equity that, although exceptions to an auditor's account are not filed within the period limited by the order of court for filing them, neverthe-

less they are held to be filed in time if they are filed before the court acts upon the audit. *Calvert v. Carter,* 18 Md. 73, 110, 111.

*Third.* Appellants objected because the chancellor refused to ratify the second audit, which showed appellee to be indebted to them in the amount of $910.08, and referred the case to a special auditor. We find no merit in that contention. Every auditor appointed by a court of equity is required to take an oath "well and faithfully to execute the duties of his office, without favor, affection, partiality or prejudice." His work is important in the administration of justice, and there should be no suspicion of bias or unfairness in his work. The statute directs that in any case when it appears that it may not be proper for the regular auditor to act, the court should appoint a special auditor. Code 1951, art. 16, sec. 20. Moreover, the law is clear that even after a case has been submitted to an auditor, the court has the right to authorize either that auditor or another to take additional testimony, although this right is not frequently exercised except in cases where omissions or defects of proof have resulted from accident or inadvertence. *Green v. Green,* 182 Md. 571, 574, 35 A. 2d 238.

In the Court below appellants made the excuse that the auditor sent the letter before he prepared the audit, and that his only object in sending it was to endeavor to induce the parties to reach a settlement. Appellants also argued that the letter had not been introduced in evidence when the chancellor decided to refer the case to the special auditor, and hence he considered the letter *ex parte.* They made the further objection that the original letter could not be found and the chancellor ordered a carbon copy of it to be inserted in the record.

We find no merit in any of these objections. At the hearing on the exceptions to the second audit, the auditor admitted not only that he had written the letter, but also that he had conferred privately with one of the appellants before he filed his audit. Even though the

original letter cannot be found, a copy of it was read to the chancellor in the presence of the court auditor and the attorneys and was thoroughly discussed. It cannot be said that the chancellor acted upon the letter *ex parte*. It is abundantly clear that the chancellor had the right to decline to ratify the second audit and to refer the case to the special auditor.

*Fourth.* Appellants finally contended that the special auditor went on a search of the customs of share-croppers and ignored the testimony as to the oral agreement, and therefore his audit is not supported by the weight of the evidence.

The difficulty with this contention is that appellants failed to print any testimony in the appendix to their brief. As we have explained a number of times, the Court of Appeals adopted Rule 36, putting an end to the necessity of printing records on appeal, with the object of reducing the expense of appellate litigation. For that reason the only things the rule requires the appellant to print in the appendix to his brief are the judgment, decree or order appealed from and any opinion or charge of the Court. Rule 39, however, requires that the appendix to the appellant's brief shall also contain "such parts of the record as he desires the Court to read." In other words, the appellant must print in his appendix all of the testimony material to the issue. Where the Court of Appeals must consider all material evidence in order to decide the question raised by the appellant, it is not sufficient for him to print in the appendix to his brief only those portions of testimony which he considers favorable to himself, but he must print all the testimony which the Court has to have before it to decide such question. *Sunshine Laundry Corporation v. White*, 197 Md. 582, 80 A. 2d 1; *Strohecker v. Schumacher & Seiler*, 185 Md. 144, 43 A. 2d 208; *Butler v. Reed-Avery Co.*, 186 Md. 686, 48 A. 2d 436; *Naughton v. Paul Jones & Co.*, 190 Md. 599, 59 A. 2d 496; *Platt v. Wilson*, 191 Md. 371, 62 A. 2d 191; *Seybolt v. Baber*, 203 Md. 20, 97 A. 2d 907.

On this appeal appellants should have printed in their appendix all of the testimony necessary for a proper consideration of the various questions raised by them. They did not comply with the rule. Thus we cannot determine whether or not the audit ratified by the chancellor is supported by the weight of the evidence. It is true that appellants referred in their brief to a number of places in the transcript where there is testimony which they considered favorable to them. It is also true that in *Seybolt v. Baber,* 203 Md. 20, 26, 97 A. 2d 907, 909, where the appellants failed to print any testimony in their appendix, we gave consideration to the case. But there the conflict in the testimony was very narrow, and the testimony was actually supplied by the appellee's brief and the opinion of the trial judge. In the present case, on the contrary, the transcript is voluminous and complicated, and neither appendix contains any testimony.

As we have found no reversible error in the rulings of the chancellor, his order ratifying the audit submitted by the special auditor will be affirmed.

*Order affirmed, with costs.*